UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHARLES YACKLON,


                              Plaintiff,

                                                              DECISION AND ORDER

                                                              10-CV-6079L


                    v.

EAST IRONDEQUOIT CENTRAL SCHOOL DISTRICT,
SUSAN ALLEN,
JOHN ABBOTT,
KATHERINE CALLON,


                              Defendants.
_____


**INTRODUCTION**


       Plaintiff Charles Yacklon, appearing *pro se*, brings this action against the East Irondequoit

Central School District ("District"), and three individuals, John Abbott, Susan Allen, and Kathleen

Callon, all of whom are employees of the District.  Yacklon alleges that defendants have

discriminated against him on account of his age, in violation of the Age Discrimination in

Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*

       Defendants have moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure, or in the alternative for summary judgment under Rule 56 (Dkt. #4).

Plaintiff has filed what is styled as a motion to compel (Dkt. #11) and a motion to set a trial date (Dkt. #15).

**SUMMARY JUDGMENT NOTICE**

Before turning to the parties' motions, it is necessary to address whether to treat defendants' motion as a motion to dismiss, or as a motion for summary judgment. The Second Circuit has held that "[a] district court may not convert a motion under Fed. R. Civ. P. 12(b)(6) into a Rule 56 motion for summary judgment without sufficient notice to an opposing party and an opportunity for that party to respond." *Wali v. Chelsea Plastics*, 351 Fed.Appx. 547, 548 (2d Cir. 2009) (quoting *Groden v. Random House, Inc.*, 61 F.3d 1045, 1052 (2d Cir. 1995)). "[P]ro se litigants must have unequivocal notice of the meaning and consequences of conversion to summary judgment," because a "*pro se* litigant may be unaware of the consequences of his failure to offer evidence bearing on triable issues." *Wali*, 351 Fed.Appx. at 548-49 (internal quotation marks and citations omitted). *See also Ruotolo v. Internal Revenue Serv.*, 28 F.3d 6, 8 (2d Cir. 1994) ("The failure of a district court to apprise *pro se* litigants of the consequences of failing to respond to a motion for summary judgment is ordinarily grounds for reversal") (per curiam).

The adequacy of such notice is "governed by principles of substance rather than form." *Sahu v. Union Carbide Corp.*, 548 F.3d 59, 67 (2d. Cir. 2008) (quoting *In re G. & A. Books, Inc.*, 770 F.2d 288, 295 (2d Cir. 1985)). Consequently, "[t]here is no requirement that the district court affirmatively advise the *pro se* litigant of the nature and consequences of a summary judgment

motion if the *pro se* litigant has otherwise been adequately notified or is already aware of such

consequences." *M.B. v. Reish*, 119 F.3d 230, 232 (2d Cir. 1997). A *pro se* litigant's comprehension

of the nature of a summary judgment motion may be demonstrated not only by his receipt of a formal

notice, but by his response to the motion. *See, e.g., Forsyth v. Federation Employment and*

*Guidance Service*, 409 F.3d 565, 571 (2d Cir. 2005) ("Based on plaintiff's submissions to the district

court, including his affidavit in opposition to the motion for summary judgment, and his affidavit

..., we think it clear that plaintiff understood his responsibilities under Rule 56"), *abrogated on other*

*grounds by Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007)).

In the case at bar, defendants' notice of motion was accompanied by a "Notice to *Pro Se*

Litigants Opposing Summary Judgment," which fully detailed the nature of a summary judgment

motion, the manner in which plaintiff should respond, and the possible consequences if he failed to

do so. Dkt. # 4. In response to the motion, Yacklon submitted three separate responses (Dkt. #10,

#13, #14), totalling some 56 pages, including numerous exhibits. He also filed a "motion to compel"

(Dkt. #11) which despite that title is akin to a statement of material facts alleged to be in dispute.[1]

I therefore conclude that plaintiff has been given more than adequate notice the significance of

defendants' motion, which I treat as a motion for summary judgment.

---

[1]Nothing in the motion to compel suggests that plaintiff needs discovery in order to frame
a response to defendants' motion. What plaintiff seeks to "compel" defendants to do is respond
to his factual assertions, *e.g.*, "Charles Yacklon is a good school bus driver," "Kathleen Callon is
not a school superintendent," etc. Dkt. #11 at 2, 3.

# FACTUAL BACKGROUND

Yacklon was hired as a school bus driver in 2004 by Laidlaw, Inc. Laidlaw has contracted with multiple public school districts and private schools in the Rochester, New York area to provide busing services for their students. Plaintiff was seventy years old at the time he was hired.

When he began working for Laidlaw, Yacklon filled in for other drivers, driving a number of different routes for various school districts. Pursuant to the terms of the collective bargaining agreement between Laidlaw and plaintiff's union, however, drivers are eligible to bid on specific routes when those routes become available. When that occurs (*e.g.* as a result of a driver's retirement), Laidlaw drivers are eligible to bid on the route, and typically the route is awarded to the bidding driver with the most seniority.

That general rule is subject to some qualifications, however. Of particular relevance to this case is ¶ 23 of the contract between the District and Laidlaw, which provides that "[Laidlaw] agrees that the District has the right to require [Laidlaw] to remove from District service any person or driver who, in the District's judgment, will detract from the safe and efficient operation of school buses under this agreement." Dkt. # 10 at 33.

Sometime in 2006, Yacklon was involved in an argument with a Laidlaw dispatcher at the Laidlaw facility. Plaintiff testified at a hearing before the New York State Division of Human Rights ("SDHR") that he was yelling loudly enough to be heard throughout the facility, including in the office of defendant Callon, who, as the transportation director for the District, maintained an office

at Laidlaw's building. The argument was heated enough that plaintiff's supervisor stepped in to attempt to calm Yacklon down. Yacklon Tr. (Dkt. #7 Ex. D) at 126.

In March 2007, Yacklon bid for Route 42, which served students of the defendant District. Yacklon was the most senior driver to bid for that route.

Yacklon was not awarded Route 42, however. He testified before the SDHR that he was shown a letter from Callon to Laidlaw stating that Yacklon "ha[d] not been accepted by the superintendent of schools as a driver for East Irondequoit School District per Educational Law Section 156.3" Yacklon Tr. at 35.[2] The route was awarded to a different driver. In plaintiff's administrative proceedings before the SDHR, the District contended that its rejection of Yacklon was based on Callon's belief that he was a "'hothead' with an abrasive manner," and as such was not acceptable to the District as a driver for its students. Dkt. #10 at 11.

Yacklon filed an administrative complaint with the SDHR on April 2, 2007, charging the District with unlawful age discrimination. Dkt. #7 Ex. A. After an evidentiary hearing at which plaintiff testified, the SDHR dismissed the complaint on July 21, 2009, on the ground that Yacklon had failed to demonstrate that the District was his employer. Dkt. #7 Exs. E, F. Plaintiff then filed his complaint in this Court.

---

[2]Section 156.3 of New York's Education Department regulations sets forth the qualifications and requirements for school bus drivers, including applicable licenses, physical fitness, and character.

**DISCUSSION**

The ADEA makes it ulawful for "an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age ... ." 29 U.S.C. § 623(a)(1). It is well established that individual defendants cannot be held liable under the ADEA. *See*, *e.g.*, *Anderson v. Derby Bd. of Educ.*, ___ F.Supp.2d ___, 2010 WL 2465431, at \*2 (D.Conn. 2010); *Rehman v. State University of New York at Stony Brook*, 596 F.Supp.2d 643, 652 (E.D.N.Y. 2009). Plaintiff's claims against Abbott, Allen and Callon must therefore be dismissed.

With respect to the District, by its terms, the ADEA liability extends only to "employers." An entity that is not the plaintiff's employer therefore cannot be held liable under the ADEA. *See Camacho v. Puerto Rico Ports Auth.*, 369 F.3d 570, 572 (1st Cir. 2004) ("Section 623(a) of the ADEA imposes liability only on employers") (citing *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 67-68 (2000)); *accord Rice v. Scudder Kemper Investments, Inc.*, No. 01 Civ. 7078, 2003 WL 1846934, at \*2 (S.D.N.Y. Apr. 8, 2003); *see also Gulino v. New York State Educ. Dep't*, 460 F.3d 361, 370 (2d Cir. 2006) ("the existence of an employer-employee relationship is a primary element of Title VII claims"), *cert. denied*, 128 S.Ct. 2986 (2008).[3]

---

[3]Since the two statutes define "employer" in the same way, courts have generally applied the same principles in Title VII and ADEA cases with respect to whether a particular entity constitutes a plaintiff's "employer." *See Fantini v. Salem State College*, 557 F.3d 22, 29 (1st Cir. 2009) ("The Title VII definition of employer must be read in the same fashion as the ADEA definition of employer") (quoting *Smith v. Amedisys, Inc.*, 298 F.3d 434, 448 (5th Cir. 2002)); *Farulla v. New York Sch. Constr. Auth.*, 277 F.Supp.2d 140, 141 (E.D.N.Y. 2003) (noting that the definition of "employer" is the same under Title VII and ADEA).

As did the SDHR, I find that plaintiff's complaint must be dismissed, because there is no evidence showing that the District was his employer. There is no dispute here that plaintiff was an employee of Laidlaw, not of the District. Plaintiff himself testified as much; when asked at the SDHR hearing whether he was an employee of the District, Yacklon answered, "No, I am not and I never claimed that East Irondequoit Central School District was my employer." Dkt. #7 Ex. D at 191. *See also* Plaintiff's Motion to Compel (Dkt. #11) at 4 (stating that "[t]he company hires the drivers. The schools do not").

It is possible, then, that Yacklon is simply unaware that the ADEA only applies to "employers." Giving his *pro se* complaint a generous reading, however, he appears to articulate two possible theories on which the District could, theoretically, be held liable. First, he alleges that the District "interferred [sic] with senoir [sic] bidding for school bus routes," and "interferred with [his] employment privilege in driving routes in East Rochester." Complaint at 4. Second, plaintiff states that he seeks to "bring all facts in front of jury to pay [him] $75,000 and show employer in common ... ." *Id.*

There is a line of authority that an entity may qualify as an employer in the ADEA or Title VII context where the entity "affirmatively interfered with or affected the plaintiff's direct employment or access to employment opportunities ... ." *Gulino*, 460 F.3d at 372. Although in *Spirt v. Teachers Ins. and Annuity Ass'n*, 691 F.2d 1054 (2d Cir. 1982), *vacated and remanded on other grounds*, 463 U.S. 1223 (1983), the Second Circuit made a "foray into the hazy realm of the interference test," *Gulino*, 460 F.3d at 373, that court has since sharply limited the scope of that rule. In *Gulino*, the court noted that "*Spirt* enunciated a narrow rule based upon a unique factual posture,"

and that eleven years after *Spirt* was decided, the Supreme Court "ruled that the common-law should supply the definition of 'employee' in the absence of a statutory definition," thus effectively rejecting one of the chief rationales behind the interference test, *i.e.*, that a broader test for establishing the existence of an employment relationship would better serve the remedial purposes of employment discrimination litigation. *Id.* at 377 (citing *Nationwide Mutual Insurance Co. v. Darden*, 503 U.S. 318 (1992)).[4] *See also Lopez v. Massachusetts*, 588 F.3d 69, 89 (1ˢᵗ Cir. 2009) ("Most other circuits have also repudiated the interference theory as an impermissible deviation from the common law agency approach") (citing *Gulino*, 460 F.3d at 373-76); *DiPilato v. 7-Eleven, Inc.*, 662 F.Supp.2d 333, 346 n.3 (S.D.N.Y. 2009) (noting that "the Second Circuit has not adopted the broader 'interference test' which determines whether an 'indirect' employer relationship exists") (citing *Gulino*, 460 F.3d at 374).

Plaintiff's use of the term "employer in common" also suggests a possible "joint employer" theory. Where an individual is employed by a particular entity, an employment relationship may also be found to exist between that individual and another entity "where there is sufficient evidence that [the other entity] had immediate control over the [first] company's employees." *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 89 (2d Cir. 2005) (quoting *N.L.R.B. v. Solid Waste Services, Inc.*, 38 F.3d 93, 94 (2d Cir. 1994)).

---

[4]As the court noted in *Gulino*, Title VII, like the ADEA, "provides a rather circular definition of 'employee,' stating that '[t]he term "employee" means an individual employed by an employer ... .'" 460 F.3d at 371 n.11 (quoting 42 U.S.C. § 2000e(f)). "Employer," meanwhile, is defined in Title VII as "a person engaged in an industry affecting commerce who has fifteen or more employees ... ." 42 U.S.C. § 2000e(b). *See also* 29 U.S.C. § 630(b), (f) (setting forth almost identical definitios of "employer" and "employee" for purposes of ADEA).

"The 'single or joint employer' test utilizes a four-factored analysis developed by the NLRB to determine whether two or more employers can be treated as one for purposes of assigning liability." *Gulino*, 460 F.3d at 378 (identifying four factors as "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control"). "In this Circuit, this analysis has been confined to two corporate contexts: first, where the plaintiff is an employee of a wholly-owned corporate subsidiary; and second, where the plaintiff's employment is subcontracted by one employer to another, formally distinct, entity." *Id.* *See also Woodman*, 411 F.3d at 89 (identifying "commonality of hiring, firing, discipline, pay, insurance, records, and supervision" as "relevant factors"); *Horan v. Sears Roebuck & Co.*, No. 3:07cv1582, 2009 WL 3820654, at \*4 (D.Conn. Sept. 28, 2009) ("An entity must exercise a direct and significant degree of control over the complaining party's direct employer or the complaining party's work environment to constitute a joint employer") (internal quotation marks omitted).

Plainly, none of those indicia of joint-employer status exist here. The District had no power to hire or fire Yacklon, it did not pay him or provide him with any employment benefits, and it had no supervision over his day-to-day activities.[5] All that the District did here–and all that it could do, under its contract with Laidlaw–was to reject Yacklon as a driver on routes serving the District's

_____

[5]Although plaintiff states that Laidlaw "gave control to Kathleen Callon," the "control" to which he is referring appears to be control over drivers on the District's routes. For example, he states that Callon "signed time cards" of drivers on the District's routes, and "had closed meeting[s]" with them. Dkt. #11 at 3. There is no evidence suggesting that defendants had any control over Laidlaw's drivers generally, or specifically over plaintiff, particularly since the District *rejected* him as a driver on its routes. *See Gulino*, 460 F.3d at 372 ("a prerequisite to considering whether an individual is [an employee] under common-law agency principles is that the individual have been *hired* in the first instance") (quoting *O'Connor v. Davis*, 126 F.3d 112, 115 (1997) (alteration in original).

schools and students. Plaintiff remained employed by Laidlaw and was still free to bid on other routes serving other districts. At the time of his SDHR hearing, plaintiff testified that he was a driver on a route in West Irondequoit. Dkt. #7 Ex. D at 153. In short, the District was not plaintiff's employer, under any viable legal theory, and accordingly it may not be held liable to plaintiff under the ADEA, regardless of its reasons for rejecting plaintiff.[6]

## CONCLUSION

Defendants' motion for summary judgment (Dkt. #4) is granted, and the complaint is dismissed.

Plaintiff's motion to compel (Dkt. #11) and motion to set a trial date (Dkt. #15) are denied as moot.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      August 23, 2010.

---

[6]The Court's finding in this regard renders it unnecessary for me to address defendants' arguments concerning improper service of process.